THE STATE v. SHADD, *Appellant.*

**Criminal Law**: EMBEZZLEMENT: AGENT: COMMISSIONS. One who auctions off "pools" upon a horse race, and receives the money of the purchaser, and gives a receipt therefor, is the agent of such purchaser, and if he converts such money to his own use with intent to deprive the owner of its use and value, he is guilty of embezzlement, although the money was placed in his hands for an immoral purpose. But where such agent is to receive a per cent of the money bid and placed in his hands, such per cent should be deducted from the amount, and the offense will not be a felony if such deduction reduces it below $30.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

REVERSED.

*Charles T. Noland* for appellant.

Defendant was a simple debtor to Holman and could

not be guilty of embezzlement, he having the title to Holman's money.  *Welch v. People,* 17 Ill. 341; *Stinson v. People,* 43 Ill 397; *Comm. v. Stearnes,* 2 Metc. 347; *Comm. v. Libby,* 11 Metc. 64; *People v. Howe,* 2 N. Y. Sup. Ct. (N. S.) 383.  The contract was founded upon an immoral transaction, hence there was no valid agency and no embezzlement.  *Hayden v. Little,* 35 Mo. 418; *Benson v. Hickman,* 8 Mo. 8.  The case made by the State does not come within the purview of the statute.  The statute was passed to protect the legitimate use of property, not to regulate the morals of gamblers or their gambling contracts.  *People v. Stetson,* 4 Barb. 151; *People v. Clough,* 17 Wend. 351; *People v. Williams,* 4 Hill 9; *People v. Wilson,* 6 John. 319; *Reg. v. Hunt,* 8 Car. & P. 642.  If defendant was not a simple debtor he was a bailee, and cannot be convicted under section 1320, Revised Statutes.  He should have been indicted under section 1322.  *Hammel v. State,* 5 Mo. 260; *State v. Meyers,* 68 Mo. 266.  Defendant was part owner of the money, having a tenth interest in it, and embezzlement will not lie.  *Reg. v. Bren,* 1 Leigh & C. 346.  Even if defendant was guilty of embezzlement, he was not guilty of a felony.  He received $33, and after deducting his ten per cent the amount embezzled was only $29.70.  The court should have defined the term " reasonable doubt."  *State v. Lewis,* 69 Mo. 92.

*D. H. McIntyre,* Attorney General, for the State.

Embezzlement, or larceny to which it is closely allied, " is a crime against society and should be punished on account of its own inherent meanness and criminality, as well as on account of the less important rights of property."  Such has always been the rule in larceny.  " Goods stolen from a thief may be charged as the goods of either the thief or the true owner."  2 Bishop Crim. Law, (7 Ed.) § 789; 2 East P. C., p. 654; *Ward v. People,* 3 Hill (N. Y.) 395; 6 Hill 144; *State v. May,* 20 Iowa 305; *Comm. v. Rourke,* 10 Cush. 397; *Comm. v. Smith,* 129 Mass. 104;

*Bales v. State*, 3 W. Va. 685. The same principle applies in embezzlement. It is no defense that the money was received for an illegal purpose. *Comm. v. Cooper*, 130 Mass. 285; *State v. Tumey*, 81 Ind. 559. Defendant was an auctioneer, and, therefore, the agent of the buyer and within the provisions of section 1320, Revised Statutes. Story on Agency, (9 Ed.) § 27; Wharton's Law Lexicon, p. 74. If not an auctioneer he was a broker and an agent still. Story on Agency, (9 Ed.) § 28. It makes no difference that the owner parted with his money voluntarily, and that defendant received it from the hands of his employer. *People v. Hennessey*, 15 Wend. 147; *People v. Dalton*, 15 Wend. 581; *Lowenthal v. State*, 32 Ala. 589; *State v. Foster*, 37 Iowa 404; 2 Bishop Crim. Law, (7 Ed.) § 366. Nor that he mixed it with his own funds. 2 Bishop Crim. Law, (7 Ed.) §§ 370, 371; *Comm. v. Tuckerman*, 10 Gray 173. The fact that defendant was to receive a commission did not make him a part owner of the money. 2 Bishop Crim. Law, (7 Ed.) § 341; *Reg. v. Bailey*, 12 Cox C. C. 56.

NORTON, J.—The defendant was indicted in the circuit court of Greene county, at its November term, 1883, for embezzlement. He was tried and convicted, and his punishment assessed at three years' imprisonment in the penitentiary. The case is before us on his appeal.

It appears from the record that defendant, in August, 1883, was engaged in selling "pools" on horse races about to be run at the Driving Park grounds at Springfield; that defendant stood up in a stand, and cried out for bids for first choice, and awarded to the party making the highest bid the first choice; the party then named the horse which he believed would win the race, and deposited with defendant the amount of money bid by him. A large number of pools were sold, and the parties buying and depositing their money looked to the pool-seller to pay their wager if they won. If they lost, they were to receive nothing. To each one buying a pool he gave a card as follows:

No..............

*Association Pools.*

Mr.....................................................

Horse.........................................

Amount paid, $..........................

· Amount in pool, $.....................

CHARLES SHADD, Auctioneer.

It was understood and agreed that defendant was to receive ten per cent commission on the money deposited. It was shown by the evidence that one Holman, under the above arrangement, deposited with defendant $33, and it is for the embezzlement of this sum that defendant is prosecuted in this proceeding.

Holman lost $5 and won $10, and a race upon which $18 was bet, was not run on account of rain. Holman testified that he placed his money in defendant's hands, saw him intermingle it with other money, use it in making change and made no objection, and did not expect the return of the identical money he deposited; that he presented his tickets and demanded of defendant the amounts called for, which he declined to pay until the judges made a final decision on the races. It also appears that defendant ran away that night without paying Holman, taking with him all the money in the pool, and that when arrested near Rolla, in a different county, he had $265 concealed on his person, and $5.70 in a pocket, and when the sheriff making the arrest found the $265, defendant said " that is the money you are looking for; that $5.70 is my own money."

On this state of evidence the court gave several instructions, to the effect that if the jury believed Holman deposited $33 with defendant, under the circumstances above set forth, and that defendant converted the same to his own use, against the will and consent of Holman, and took and carried the same away with the intent to deprive Holman of it, and convert it to his own use, that he was guilty of a felony, and that they should so find.

The court refused to instruct the jury, as asked by defendant, that if, when the money was deposited, it was the understanding that defendant was to receive ten per cent of it for commission, and if, after deducting such commission from the amount deposited, the remainder would be less than $30, they could not convict defendant of a felony.   The court also refused to tell the jury that if they believed that defendant paid out by direction of Holman the $5 lost by him, that it should be deducted from the amount deposited in estimating the amount defendant was charged with embezzling.   The court also refused to instruct the jury, that if they believed defendant was appointed and acted as the agent of parties described in the indictment in the furtherance, or carrying out a transaction which was immoral and against public policy, they should acquit defendant.

It is claimed by counsel that the refusal of the above instructions, as well as its action in giving instructions on the part of the State, was erroneous.   It is argued in support of the objection to the instructions given for the State, that under the evidence defendant simply became the debtor of Holman, and not his agent.   We think this point is not well taken.   There is nothing in the evidence tending to show that it was the intention of the parties to create the relation of debtor and creditor; the tickets given by defendant were in the nature of receipts to the various parties depositing money with him, and tend to show an agency on the part of defendant with reference to the money thus placed in his hands.   But it is plausibly argued that if defendant was an agent, that inasmuch as he was holding the money for an immoral purpose, that he could not, for that reason, be convicted of embezzlement.   While some of the authorities to which we have been cited, seem to give color to this idea, we think the true and better rule is laid down in the case of *Commonwealth v. Cooper*, 130 Mass. 285, which was a prosecution for embezzlement, in which defendant was charged with embezzling a check of the value of $200,

the property of one Wood. The defendant contended that his contract with Wood was a gambling contract, and was illegal under the statute, and that even if he had appropriated the margin he could not be convicted of embezzlement. The court held that there was no evidence that Wood contemplated or authorized the defendant to enter into any gambling or illegal contract, and " if he had, the check or money sent by him would remain the subject of larceny or embezzlement; and if the defendant fraudulently appropriated it to his own use, it would be no defense to an indictment by the government for embezzlement to show that the property had been entrusted to him for an illegal purpose." *State v. Tumey*, 81 Ind. 559, is to the same effect.

It is also claimed that the court erred in refusing defendant's instructions, in effect, telling the jury that in estimating the amount embezzled they should deduct ten per cent of the amount deposited, and that if they believed the $5 lost by Holman was paid out by defendant, by direction or with the consent of Holman, it should also be deducted. We think this point well taken. The evidence clearly showed that defendant was entitled to ten per cent of said amount deposited, and tends to show that he was authorized to pay out $5 lost by Holman.

For the error indicated, the judgment will be reversed and cause remanded. All concur.