THE STATE OF KANSAS v. A. J. PATTERSON.
No. 13,025.   (71 Pac. 860.)

66  447
h68  450

66   447ⁱ
73   331

SYLLABUS BY THE COURT.

1. CRIMINAL PRACTICE—*Irrelevant Matter in Information.* It is not absolutely essential that irrelevant matter, ordered to be disregarded, should be obliterated from an information, or that the information be redrafted, when such matter consists of consecutive clauses whose emasculation does not confuse the remaining charge, and the record furnishes the means of applying the order so that its precise effect is disclosed.

2. EMBEZZLEMENT— *City Officer — Allegation of Intent.* The statute not having added in specific words an intent to defraud to the description of the crime of embezzlement by an officer of a city, and having left such intent to be derived from the words "embezzle or convert to his own use," intent to defraud need not be averred in specific words in an information for such crime.

3. ——— *Insufficient Plea in Abatement.* An allegation in a plea in abatement, that the defendant "has never had any preliminary examination as required by law for the offense charged," states a conclusion of law and not an issuable fact.

4. ——— *Insufficient Plea in Bar—Former Acquittal of Forgery.* In a criminal action against a city treasurer for embezzling and fraudulently converting to his own use money of the city which came into his hands by virtue of his office, a demurrer is properly sustained to a plea alleging the acquittal of the defendant of the charge of forging entries in his books of account with intent to defraud the city; and objections to the introduction in evidence of the defendant's books containing such entries, and to testimony regarding transactions of the city to which such entries were ascribed, were properly overruled.

5. ——— *Money Collected from Liquor-sellers.* In an action of embezzlement against a city treasurer for the fraudulent conversion of money which came into his hands by virtue of his office, it is no defense that he collected such money from persons engaged in unlawful traffic in intoxicating liquor, under an arrangement between the city and such persons whereby immunity from prosecution was secured to them.

6. ——— *Bad Advice of Counsel.* In an action of the character referred to in paragraph 5 above, evidence that, after the conversion of the money, and after an admission of his inability to pay the amount due from him to the city, he took the advice of coun-

sel who assured him that he was not subject to a criminal action, and need not account, because the city could not recover the money in a civil action, was irrelevant and properly rejected.

Appeal from Cloud district court; HUGH ALEX-ANDER, judge.     Opinion filed March 7, 1903.     Affirmed.

*C. C. Coleman*, attorney-general, *G. M. Culver*, county attorney, and *Harkness & Davis*, for The State.

*F. W. Sturges*, and *Park B. Pulsifer*, for appellant.

The opinion of the court was delivered by

BURCH, J. : The appellant was convicted of embezzlement of money which came into his hands by virtue of his official position as treasurer of the city of Clyde. The information was drawn under paragraph 2081, General Statutes of 1901, and charged both a refusal to turn over the money of the city upon demand, and a fraudulent appropriation of it to his own use, under separate clauses of the statute.    Upon a motion to quash, the district court held that the information did not state facts sufficient to constitute an offense under the clause relating to turning over money upon demand, characterized the language of the information relating to such matter as surplusage, announced that such matter would be disregarded, and sustained the information under the other clause.    The appellant then filed a motion to require the state to elect under which clause of the statute it would proceed, which was sustained, and the state elected to proceed under the clause sustaining the information, purged of surplusage.

Error is assigned because the irrelevant matter was not actually obliterated from the paper on which the information was written.     Such matter consisted of

consecutive clauses whose emasculation nowise con-

1. Irrelevant matter in information. fused the remaining charge, and the information still contained a plain written statement, in ordinary and concise language, of facts relied on as constituting a public offense. It is not suggested that the appellant was prejudiced in any way at the trial, and the record in this court furnishes the means of applying the order of the district court so that its precise effect is disclosed. Therefore, no prejudice appears affecting the rights of the defendant in presenting his appeal. It might have contributed to perfection of form, always to be commended, had the information been rewritten, but no substantial right of the appellant was invaded by the course adopted.

The information alleged that the defendant "did then and there unlawfully, feloniously and fraudulently embezzle and convert to his own use" the money of the city, and it is asserted that this is an insufficient charge of wrongful intent. The allegation includes evil intent. The word "fraudulently" relates specifically to appellant's intent in converting the city's money to his own use, and the word "embezzle" itself excludes honesty. It is not necessary

2. Allegation of intent. to allege that the money was embezzled and converted with the intention to embezzle and convert the same, and it could not be embezzled and converted innocently if done fraudulently. (*The State v. Combs*, 47 Kan. 136, 27 Pac. 818.) The statute not having added in specific words an intent to defraud to the description of the crime, and having left such intent to be derived from the words "embezzle and convert to his own use," intent to defraud need not be averred in specific words. (7 Encyc. Pl. & Pr. 441.)

29—66 KAN.

Appellant filed a plea in abatement alleging "that he, the defendant, has never had any preliminary examination as required by law for the offense charged or attempted to be charged therein against him, nor has he in any way ever waived the same, nor been fugitive from justice." The state attempted to join issue on this plea, and appellant demanded a jury trial. This the court refused, and, appellant declining to produce any evidence, the plea was overruled. Conceding that a defendant is entitled to a trial by jury of an issue of fact under a plea in abatement, 3. Insufficient plea the appellant suffered nothing by the in abatement. court's rulings. A plea in abatement must be certain to every intent. (*The State v. Hewes*, 60 Kan. 765, 57 Pac. 959.) It will not be aided by any intendment whatever, is construed with the utmost strictness, and must "contain a full, direct and positive averment of all material facts." (1 Encyc. Pl. & Pr. 23.) The statement that defendant had no preliminary examination, "as required by law," was a mere conclusion upon which no issue of fact could arise. Similar phrases have been held to present no issue of fact in many civil cases where the absolute exactness of a plea in abatement is not required.

"The facts stated in this complaint do not show that the judgment in question was void. The allegation that no summons was issued under the seal of the court, and directed and delivered to the sheriff, *as required by law*, and that no *such* summons was ever issued, etc., is not good because, instead of alleging the facts, it states only a legal conclusion." (*Krug, Sheriff, v. Davis,* 85 Ind. 309.)

"An averment that no such petition was filed as the statute requires, is a mere conclusion and not traversable." (*Schuchert v. W. C. & W. R. R. Co.*, 10 Ill. App. 397.)

''The plaintiff averred in the seventh paragraph of his petition that 'there was no such sale of the property as the law provides, and that there was no compliance with the law after the property was offered for sale.' The defendant moved to strike out the paragraph, on the ground that it averred only a conclusion of law. The motion was sustained, and the plaintiff excepted. He insists that the paragraph should be taken with other paragraphs which he claims contain averments of facts showing in what the illegality of the sale consisted. . Whatever is numbered as a distinct paragraph should contain something more than a mere conclusion of law based upon statements of facts contained in some other paragraph. We think the court did not err in sustaining the motion.'' (*Cooper v. French*, 52 Iowa, 531, 3 N. W. 538.)

''An allegation that S. is not now or never has been legally appointed assignee for N. is a conclusion, and a demurrer thereto should have been sustained.'' (*Smith v. Kaufman & Co'.*, 3 Okla. 568, 41 Pac. 722.)

Since the plea was fatally defective in one of its material averments, it was not error to refuse a jury to try it, or to overrule it altogether, as was done.

The appellant filed a plea in bar showing that he had been prosecuted for the offense of forging entries in his books of account, and had been

4 Insufficient plea in bar.

acquitted because the false entries had been authorized by the city, and alleging the identity of that offense with the one embodied in the information for embezzlement. A demurrer to the plea was sustained. On the trial appellant's books containing the entries in question were introduced in evidence, and testimony given regarding transactions of the city to which such entries were ascribed. The record in the forgery case was read in evidence, and the court instructed the jury that it was conclusively proved that appellant was innocent of forgery, and

had authority from the city to make the entries. It is now urged that the plea was valid and the evidence prejudicial.

The specific charge in the forgery case was that the defendant made certain false entries in his books of account, whereby his claim against the city purported to be increased, and the obligation of the city to him diminished, and the obligation of the city on certain bonds purported to be discharged, with intent to defraud the city. In this case it is alleged that, by virtue of his office, he received moneys which he unlawfully and fraudulently embezzled and converted to his own use. There is but one element common to these crimes, and that is an intent to defraud. The acts to which the intent relate are wholly dissimilar. In one case the crime is accomplished by making false entries in an account-book ; the receipt and appropriation of money are not involved. In the other case the crime is accomplished by receiving and converting money ; the making of false accounts is not involved. The statute defining one crime punishes the falsification of records of business transactions ; that is the substantive offense. The statute defining the other crime punishes the conversion of money ; that is the substantive offense. Each statute relates to a separate criminal act. The issues to be tried in each case are not identical. Neither offense includes the other offense. In each case some act which constitutes an indispensable element of the crime is necessary, which is different from any act required by the other. All the evidence necessary to prove the receipt and conversion of money with intent to defraud would not establish the making of false entries with intent to defraud, and all the evidence necessary to prove the forging of entries of ac-

counts would not prove the receipt and conversion of money.

These are the tests which have been applied by this court in determining the sufficiency of pleas of former jeopardy :

"The two offenses are entirely distinct.   One is not included in the other—is not a lesser degree of the other.   The character of the testimony must be different in each.   One fact, that is, 'shooting,' may be necessary for conviction under either charge.   But something more is necessary in each than the mere fact of shooting.   The rule is thus stated by Wharton in his Criminal Law (1 Wharton, 7th ed., § 565) : 'It may be generally said that the fact that the two offenses form part of the same transaction is no defense when the defendant could not have been convicted at the first trial, on the indictment then pending, of the offense charged in the second indictment.'"   (*The State v. Horneman*, 16 Kan. 452.)

"Now, although the matters charged in both complaints occurred at the same time and grew out of the same difficulty, still we think that they constituted two different offenses against the city ordinances of the city of Olathe—one for the assault and battery upon J. F. Border, and the other for disturbing the peace, by drawing the revolver upon John Border, and by the defendant's other violent conduct, and his improper language.   The assault and battery upon J. F. Border certainly did not include all these other matters charged in the complaint made by John Border.   And the punishment for the assault and battery upon J. F. Border was certainly no punishment for the breach of the peace in pointing a revolver at John Border."   (*City of Olathe v. Thomas*, 26 Kan. 233.)

"But it is clear beyond all doubt, as appears from the real facts of the case as set forth in the defendant's plea of a former acquittal, that the principal facts constituting the two alleged offenses are identi-

cally the same ; and that one of such offenses could not be proved without proving the principal facts constituting the other of such offenses. Indeed, the offense charged in the first information could not be proved without proving all the facts constituting the offense charged in the second information. If the defendant wa's guilty under either information, he must have been guilty under both ; and if he was innocent as to either of the offenses charged, he must have been innocent as to both. He could not possibly be guilty of one and innocent of the other.'' ( *The State v. Colgate*, 31 Kan. 511, 3 Pac. 346, 47 Am. Rep. 507.)

"Both informations charge offenses under the same section of the statutes, viz., section 38 of the act regulating crimes and punishments. Both informations refer to the same acts, the only difference being that a different criminal purpose is attributed to the defendant. We think under this section the substantive offense is the assault. The intent with which it was committed characterizes it and determines its degree of criminality. Only one prosecution can be maintained under this section for the same assault, whatever the purpose of the defendant may have been.'' ( *The State v. Chinault*, 55 Kan. 326, 40 Pac. 662.)

See, also, *The State v. Williams*, 60 Kan. 837, 58 Pac. 476.

In the case of *State v. Cross and White*, 101 N. C. 770, 9 Am. St. Rep. 53, 7 S. E. 715, officers of a national bank forged a note and entered it on the books of the bank as assets, with intent to deceive the bank examiner. The federal courts had exclusive jurisdiction to try the offenders for the false entries. In a prosecution in the state court for the forgery of the note this fact was pleaded in bar. The argument in support of the plea was as follows :

"The false entries on the books of the State National Bank of Raleigh, N. C., *are so false* because based

upon the forged notes.   If the notes are not forged, the entries are not false.   To determine the falsity of said entries, the federal court has exclusive jurisdiction. If the state court be conceded jurisdiction to try the defendants for said forgeries, the federal court cannot afterwards try the defendants for the false entries, the forgeries being integral and essential elements in the false entries.   The federal court having exclusive jurisdiction to determine the falsity of the entries and to punish the makers thereof, it follows that jurisdiction to try the defendants for said forgeries cannot be conceded to the state court.''

The court held, however, that, notwithstanding the forged note was the instrument employed to give a false coloring to the entry and deceive one examining into the financial condition of the bank, the forgery and the making of the false entries were distinct crimes, punishable separately, and said :

''The forgery is not, then, a constituent part of the criminal act of making a false entry, though in the present case preceding the latter in time, and comprehended in the general purpose formed to defraud, and furnishing strong evidence of the unlawful intent in making the entries, and thus misrepresenting the resources and condition of the association when undergoing official examination. . . . The principle is not affected by the fact that the spurious character of the note may supply forcible if not invincible evidence of the *mala fides* and fraudulent purpose of the act of the making the false entry.''

The conviction of forgery in the state court was, therefore, affirmed, in spite of the fact that the defendants could still be prosecuted in the federal courts for making false entries, and that the latter crime was necessarily provable in part by showing the forgery of the note.

The demurrer to the plea was properly sustained, and the objection to the evidence properly overruled.

The defense to the action was that appellant collected the money embezzled from persons engaged in unlawful traffic in intoxicating liquors in the city of

5. Money collected from liquor-sellers.

Clyde, under an arrangement between such persons and the city whereby immunity from prosecution was secured to them. Counsel for appellant call this money "blood-money"; characterize its collection as "robbery," and, from their language, would seem to regard the transaction at least as infamous as that of the thief "in the sacristy with the fair adornments," whom Dante located as far down as the eighth circle of hell. And because of the utter indefensibility of the conduct of the city and of the appellant under the law, it is claimed he cannot be punished criminally. The defense is applied in many ways. It is said the city could not authorize the collection of such money; that appellant could not act for the city in such business; that he did not act as city treasurer, or by virtue of such office, and could exercise no official conduct in such an affair; that money received by him from such source could not, and did not, become the property of the city; and that, if it did become the city's money, it was so unclean that the law of embezzlement will not take cognizance of it. The district court excluded all evidence relating to this defense. In this it was correct. The defense is repugnant to law, to morality, and even to expediency in the regulation of the conduct of individuals in society.

In 1852 the supreme court of Massachusetts, in deciding that money accumulated by the illegal sale of intoxicating liquors was nevertheless the subject of larceny, said:

"That same common law, which, in its integrity

The State v. Patterson.

and wisdom, refuses to lend itself to be the instrument, even indirectly, for the execution of a criminal contract, will as little condescend to throw its mantle over crime itself.   The law punishes larceny, because it is larceny ; and, therefore, one may be convicted of theft, though he do but steal his own property, from himself or his bailee.  7 H. VI. 43$a$; 3 Co. Inst. 110. And the law punishes the larceny of property, not solely because of any rights of the proprietor, but also because of its own inherent legal rights as property ; and, therefore, even he, who larceniously takes the stolen object from a thief whose hands have but just closed upon it, may himself be convicted therefor, in spite of the criminality of the possession of his immediate predecessor in crime.   This principle is coeval with the common law itself as a collection of received opinions and rules, for we have to go back to the Year-books to find its first judicial announcement. The leading decision is the case of a so-called John at Stile, in 13 Edw. IV, 3$b$., where it was held by the judges that if A. steal the goods of B., and afterwards C. steal the same goods from A., in such case C. is indictable both as to A. and as to B.   This decision was afterwards affirmed *arguendo* in 4 Hen. VII 5$b$.   .   .   .

"We do not say our doctrine is good law, merely because it was in principle so adjudged in the time of the Plantagenets and the Tudors ; but we say it is good law, also, because it is reasonable and just ; because every subsequent authority in England, such as Hale, I Hale, P. C. (Am. ed.) 507 ; East, 2 East, P. C. 654 ; Russell, 2 Russ. on Crim. (6th Am. ed.) 89, has adopted and approved it ; because it has been affirmed by modern judicial opinion in England ; *Wilkin's Case*, 2 Leach, 586 ; because it has already been recognized in the United States ; *Ward v. The People*, 3 Hill, 396 ; and because it thus bears that genuine stamp of venerable time, which consists, not in the antiquity of date — for there may be old errors as well as new ones — but in having stood the test of the scrutiny of many successive ages.   .   .   .

"If, looking beyond the mere question of property, we pass to considerations of public policy, this may be regarded in two points of view, one, of convenience in the administration of justice, the other, of higher ethical relation. As to the former point, it is not easy to conceive anything which would more seriously embarrass the public ministers of justice, and obstruct its administration, than if it were held that any element of illegality in the acquisition of property rendered it incapable of being the subject of larceny, and if, as a consequence, the necessity followed, in every case, to go into the inquiry how the party complaining acquired the property.

"As to the latter point, if the question be put in the form most favorable to the argument for the defendant here, it stands thus : of the alternative moral and social evils, which is the greater — to deprive property unlawfully acquired of all protection as such, and thus to discourage unlawful acquisition but encourage larceny ; or to punish, and so discourage larceny, though at the possible risk of thus omitting so far forth to discourage unlawful acquisition? The balance of public policy, if we thus attempt to estimate the relative weight of alternative evils, requires, it seems to us, that the larceny should be punished. Each violation of law is to be dealt with by itself. The felonious taking has its appropriate and specific punishment; so also has the unlawful acquisition." (*Commonwealth v. Rourke*, 10 Cush. 397.)

Such is the law both of larceny and embezzlement in the United States. (*State v. Cloutman*, 61 N. H. 143 ; *Commonwealth v. Smith*, 129 Mass. 104 ; *Commonwealth v. Cooper*, 130 id. 285 ; *Woodward v. The State*, 103 Ind. 127, 2 N. E. 321 ; *State v. O'Brien*, 94 Tenn. 79, 28 S. W. 311, 26 L. R. A. 252 ; *People v. Hawkins*, 106 Mich. 479, 64 N. W. 736 ; *The State v. Shadd*, 80 Mo. 358 ; *Miller & Smith v. The Commonwealth*, 78 Ky. 15, 39 Am. Rep. 194 ; *The State of Iowa v. May*, 20 Iowa, 305 ; *Bales v. The State*, 3 W. Va. 685 ; *State v.*

*Littschke*, 27 Ore. 189, 40 Pac. 167 ; *Hertzler v. Geigley*, 196 Pa. St. 419, 46 Atl. 366, 79 Am. St. Rep. 724.)

Crime does indeed beget crime, but such progeny cannot justify itself before the law by its hideous and hateful parentage.

Appellant invokes the aid of that principle of law which refuses to enforce contracts growing out of violations of law, and cites the decisions of this court to that effect, up to and including *Alexander v. Barker*, 64 Kan. 396, 67 Pac. 829. Such cases have no application to prosecutions for embezzlement, since a criminal action may be maintained, even though a civil remedy be denied ; and if such authorities were pertinent, they have no application to the facts of this case.

In this case the appellant charged himself with the money collected on his books as treasurer of the city, and accounted for it to the city in his quarterly statements. This was ample proof of the fact that he received the money as city treasurer, that the property in the money had passed to the city, and that he held it as such. The money was in the possession of the city to the same extent as if it were in its vaults. It was not mere plunder in his hands, to be divided or accounted for. This being true, authorities are abundant that the city would not need to rely upon the illegal transaction to recover the money, and that appellant could not defeat an action for that purpose by setting up such a defense.

"It has been observed that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case." ( *W. H. Gilliam, Ex'r, v. W. T. Brown*, 43 Miss. 641, 660.)

"That principle is that where an officer has actually received public revenue, either under an invalid au-

thority or without any color of authority, he and his sureties are estopped to resist a recovery of the money thus received.'' (*Galbraith v. Gaines*, 10 Lea [Tenn.] 568.)

See, also, *Placer County v. Astin*, 8 Cal. 303; *Evans v. City of Trenton*, 24 N. J. L. 764; *Brooks v. Martin*, 2 Wall. 70, 17 L. Ed. 732; *Owen v. Davis*, 1 Bailey (S. C.), 315; *Baldwin Brothers v. Potter*, 46 Vt. 402; *Norton v. Blinn*, 39 Ohio St. 145; *Roby v. West*, 4 N. H. 285, 17 Am. Dec. 423; *Daniels et al. v. Barney, Same v. Wells*, 22 Ind. 207; *Kiewert v. Rindskopf*, 46 Wis. 481, 1 N. W. 163, 32 Am. Rep. 731; *First Nat. Bank v. Leppel*, 9 Colo. 594, 13 Pac. 776; 1 A. & E. Encycl. of L. (2d ed.) 1088; 15 A. & E. Encycl. of L. (2d ed.) 1098; *The State v. Spaulding*, 24 Kan. 1; *Hardy v. Jones*, 63 id. 8, 64 Pac. 969, 88 Am. St. Rep. 223.

For the purpose of defeating the charge of fraudulent intent, appellant offered to show that he took the advice of counsel, first at Clyde and then at Concordia, who assured him that the city could not recover the money in a civil action, and that for this reason he was not subject to a criminal action, and need not account. This advice was not received, however, until after the conversion was complete, until after he had resorted to deception to conceal the fact, and until after he had confessed his inability to pay. The evidence offered, therefore, served to prove nothing but an intention to keep the money, instead of innocence in its previous appropriation, and was properly rejected.

<span style="float:left">6. Bad advice of counsel.</span>

Many other questions are presented by counsel for appellant in their elaborate and able brief, and some of the matters here discussed are presented in several aspects. Each question and argument has received the attention the importance of the case demands.

A publication of the views of the court upon them is unnecessary. The appellant was given a fair trial, and the record is free from material error.

The judgment of the district court is therefore affirmed.

All the Justices concurring.