No. 25,977.

THE STATE OF KANSAS, *Appellee,* v. FRANK HAMILTON, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Evidence—Sufficiency.* In a criminal action the proceedings considered, and *held,* the evidence was sufficient to support a conviction of the defendant, first, of assaulting, maiming and wounding a person under circumstances which, if death had ensued, would have constituted murder. or manslaughter; second, of robbery in the first degree; third, of the larceny-of an automobile; fourth, of white slavery.

2. SAME—*Trial—Remarks of Judge.* Remarks by the court in the progress of the trial are held to have been nonprejudicial.

3. SAME—*New Trial—Expiration of Statutory Period.* Refusal to permit the filing of a motion for a new trial after expiration of the statutory time held not to have been erroneous.

4. SAME—*Generally.* Various assignments of error considered and held not to be well founded.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed November 7, 1925. Affirmed.

*James G. Sheppard,* of Fort Scott, for the appellant.

*C. B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, *Ernest E. Blincoe,* county attorney, and *Hubert Lardner,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant appeals from a conviction on four counts: First, of assaulting, maiming and wounding Elmer E. Smith under circumstances which would have constituted murder or manslaughter if death had ensued; second, of robbery in the first degree; third, of the larceny of an automobile; fourth, of white slavery.

The defendant at the time of the trial was eighteen years old. He had lived most of his life in Mulberry, Crawford county. A brother conducted a confectionery store in Mulberry. A short time prior to May 11, 1924, one O. R. Shannon or O. R. Isom came to Mulberry and purchased the interest of defendant's brother in the store. The defendant had been working for his brother and continued to work for Isom. Business was not good and Isom told the defendant he wanted him to work for him in a hotel in Kansas City. On May 11, 1924, Isom, the defendant, and a woman by the name of May

1. Assault and Battery, 5 C. J. § 331; Larceny, 36 C. J. § 483; Robbery, 34 Cyc. p. 1808; Seduction, 35 Cyc. p. 1358.   2. Criminal Law, 17 C. J. § 3637.   3. Id., 16 C. J. § 2732; 20 R. C. L. 302.

State v. Hamilton.

Black left Mulberry in an automobile for Fort Scott. They were driven by Don Elliott. They left Mulberry about nine o'clock at night, and on arrival at Fort Scott went to Mrs. Jackson's rooming house where they procured rooms with a door between them. The next morning Isom and the defendant decided to attend a celebration at Bronson, to which place they went on a Missouri Pacific train. They remained in Bronson that day, and on that night Isom engaged Elmer E. Smith to drive them to Fort Scott. They left in Smith's Ford sedan, Smith driving, Isom and Hamilton sitting in the back seat. On the way to Fort Scott, and when about eight miles distant therefrom, Smith was shot and left in a field by the side of the road. Isom and Hamilton continued to Fort Scott, Hamilton driving Smith's car. From there they drove to Joplin, Mo., where they abandoned Smith's car near the police station. They continued by rail to Neosho, Mo., then to McElhaney, Mo., and then walked from McElhaney three miles to a farm of Hamilton's uncle, where they remained approximately thirty-four hours. They then walked to Goodman, about five miles, and around through Oklahoma and down to Fort Smith, Ark., then to Mulberry, Ark., from which place the defendant returned, first to Pittsburg, Kan., and then to his home at Mulberry. Upon his return he discovered that the officers were seeking him, and, with his mother and brother, went to Fort Scott and surrendered. Isom was apprehended, pleaded guilty to the same charges as lodged against the defendant, and is serving his time in the penitentiary.

The defendant contends that there was not sufficient evidence to sustain the verdict of the jury and judgment of the court under the various counts. We do not concur in that view. Smith, although badly wounded and left for dead in the field near the road, recovered. He testified that he was fifty-six years old, had lived in the vicinity of Bronson for twelve or fifteen years; that he owned the Ford sedan in question; that the defendant and Isom employed him to drive them to Fort Scott; that he had never met them before; that each had a suitcase; that when near Turner's pasture coming down a hill east, he (Smith) who was driving the car, shut off the gas; that he turned his head around a little bit and noticed some sort of a flash and that Hamilton jumped up with a gun in his hand and grabbed the switch, while Isom pushed him in the back and shot him; that Smith turned or threw the car so it would run into the ditch; that the left hand of each of the three immediately went

to the steering wheel; that when the car struck the ditch it upset Hamilton with his gun in his hand and the gun hit the windshield; that Isom and the defendant Hamilton turned the steering wheel so that the car came out of the ditch, but Smith again jerked it so that the car again ran into the ditch; that defendant Hamilton was about to shoot him through the arm, and then began scrambling to put his gun in his pocket; that Isom "cracked" him again as he was turning the wheel to the ditch again, and about the time he got to the ditch he had two more bullets through him; that he could not be sure as to the sized gun, but knew the one Hamilton had was a bright gun; saw it the instant the bullet went in him; knew he had it in his hand and was starting to shoot when Isom said, "You guide it, . . . I knew he was fixing me"; that after he was shot he was almost paralyzed, but his mind was clear, could think and watch. They shut off all the lights; that on the approach of another car the defendant and Isom got out of the car and out of sight; when the car had passed, Hamilton came back and began pulling on him trying to pull him between the seats of the car to get him out; that once or twice when cars were passing the defendant and Isom got out of sight, but·that they finally succeeded in pulling him out of the car. The testimony showed that they grossly assaulted Smith, kicking him in the body and neck, dragging and throwing him over a hedge fence, and that twice Isom held his ear to Smith's heart to see if he still lived, and that they finally left him for dead; that Smith was rendered insensible; that when he regained consciousness he was able to drag himself through the hedge and out into the road where, after vainly signaling several cars, one stopped. He was taken by its occupants to Bronson to the hotel, from which he had taken his passengers. From there he was taken to a hospital and eventually recovered.

The evidence showed that the defendant either actually participated, or aided, assisted and abetted in the commission of all the crimes charged against him. It showed that he ran around with Isom while they were at Mulberry; that he knew Isom was not married to the girl they took to Fort Scott; that they purchased guns prior to their departure; that Hamilton was a willing party; that he assisted voluntarily in disposing of Smith after he was shot; and that he voluntarily assisted in the flight. A contention that he was under the domination of Isom and coerced by Isom in the perpetration of the crimes is without merit. He could have desisted

or escaped from Isom prior to the time he did had he really desired so to do; a further recital of the evidence would serve no useful purpose. It was sufficient to support the verdict and judgment on each count.

Complaint is made of various alleged trial errors. On behalf of the state it is contended that these matters are not reviewable because the defendant failed to file a motion for new trial within the time required by the statute and not until after judgment. The defendant complains that he was in jail, and that the attorneys who represented him in the trial failed to file his motion in time. His present counsel was not in the case until after the judgment, and after the expiration of the time required for filing the motion for new trial. While the defendant is in no position to complain of the trial errors, we have examined the record, and are of the opinion that there was no error committed which would warrant a reversal of the judgment. Complaint is made of some remarks by the court in the course of the examination of the defendant which it is contended were prejudicial. The court said, "He is trying to frame some excuse for his actions that happened there. Go ahead." It is contended by the state that the court's remarks were not used with the intent or meaning given by the defendant; that what the court meant was that the defendant was trying to call to mind and testify as to his conduct. While the language of the court in cold print might indicate the court was not as careful as it should have been, we are of the opinion that, under all the circumstances, this remark and others to which attention has been directed were not such as to require a reversal.

Due consideration has been given to the various other complaints, but we find no error which would warrant a reversal of the judgment.

The judgment is affirmed.

HARVEY, J., concurs in the decision.