No. 36,704

Cornelius Zacharias Wiebe, *Petitioner*, v. Robert H. Hudspeth, Warden of the Kansas State Penitentiary, *Respondent.*

(180 P. 2d 315)

Opinion filed May 3, 1947.

*E. J. Webber,* of Topeka, argued the cause and was on the briefs for the petitioner.

*Harold R. Fatzer,* assistant attorney general, argued the cause, and *Edward F. Arn,* attorney general, was with him on the briefs for the respondent.

The opinion of the court was delivered by

Smith, J.: This is an original petition for a writ of habeas corpus wherein petitioner asks that he be discharged from confinement in the penitentiary at Lansing, Kansas.

This petition was originally filed in the district court of Leavenworth county. It was heard there and a writ denied. Petitioner attempted to appeal but the appeal was not perfected in time and his motion that his appeal be considered as an original application in this court was granted. On motion of the petitioner an attorney was appointed to present the cause to this court. He has submitted a brief and abstract on petitioner's behalf. The application as presented by counsel presents three grounds: First, that the district court convicted petitioner upon repugnant and, therefore, void informations and that the sentences were, therefore, void; that he

was deprived of due process of law and that he was placed in double jeopardy in contravention of section 10 of the bill of rights and that the court was without jurisdiction to pronounce the sentences; second, that the pleas of guilty were not binding upon the petitioner because they were obtained by means of threats and coercion by the county officials; third, that the alleged pleas of guilty were not binding upon petitioner because they were not substantiated by any other evidence. Respondent, the warden of the State Penitentiary at Lansing, in his return denied all of the allegations of the petition and said that the petitioner was legally confined in the state penitentiary by virtue of a valid judgment and sentence under date of November 25, 1936, whereby the petitioner was committed in two separate cases, each charging him with statutory rape and incest, which sentence had not expired at the time the return was filed.

True copies of the informations, journal entries and commitments were attached to the return.

Two informations were filed against the petitioner, each in two counts. The first information charged petitioner with statutory rape on the 15th day of April, 1935, upon one Rosa Wiebe, she being an unmarried female person under the age of eighteen years. The second count charged petitioner and Rosa Wiebe with incest, she being his daughter.

The journal entry for this case shows that the cause came on to be heard on November 25, 1936; that the state was represented by the county attorney and the defendant was present in person and by his counsel, C. C. Wilson; that he was duly arraigned, waived a jury trial and entered a plea of guilty to both counts of the information and announced he was ready to receive the sentence of the court; that the court sentenced him to be confined at hard labor at the state penitentiary for a period of not less than one year nor more than twenty-one years on the first count, and on the second count that he be confined at the same place for a period not exceeding seven years, and that the sentences on the two counts run consecutively.

The information in the second case was exactly like that in the first case except that the illicit acts were charged to have been committed with Opal Wiebe, who was also an unmarried female under the age of eighteen years and a daughter of petitioner. The sentence in the second case was identical with the one in the first case, but no reference was made to the sentence in the first case.

The petitioner was sentenced on November 25, 1936, and has been confined in the penitentiary since shortly thereafter.

We shall first consider the argument of counsel that the information in each case was void for the reason that each contained repugnant counts.

Counsel argues first that incest can be committed only by the concurrent consent of the man and woman; that in Kansas a female person cannot give consent if under the age of eighteen years—hence if petitioner committed statutory rape on his daughter he could not by the same act commit incest with her.

The court dealt with the general question in *State v. Learned,* 73 Kan. 328, 85 Pac. 293. In that case the defendant was charged together with his granddaughter with incest in six counts. The defendant filed his plea in bar to the first five counts of the information on the ground that he had been previously acquitted of statutory rape upon the same granddaughter and that the two informations referred to the same acts of intercourse. The state filed an answer admitting the previous acquittal, but alleging that the two offenses charged were not the same either in law nor in fact and that the only matter involved in the previous prosecution was whether the defendant had intercourse with his granddaughter within the time provided by the statute of limitations. The trial court sustained the defendant's demurrer to this answer and abated the action as to three of the counts and sustained his motion to quash the information as to the other three. The state reserved the question and appealed. The question raised was whether one act of intercourse could be the basis of two charges—statutory rape and incest—providing the other elements of each offense were present. The court said:

"The distinctive ingredient of the crime of incest is the relationship of the parties, while the distinctive ingredient of the crime of statutory rape is the youthfulness of the female. The evidence necessary to convict of incest would not be sufficient to convict of statutory rape, as there need be no evidence as to the age of the female. On the other hand, evidence that would convict of statutory rape would not suffice to convict of incest, as the relationship is wanting. Hence the crimes, although committed by the same act, are different crimes; and a prosecution for one is no bar to a prosecution for the other. (*The State v. Patterson,* 66 Kan. 447, 71 Pac. 860.)" (p. 331.)

Our statute on statutory rape is G. S. 1935, 21-424. It provides, in part, as follows:

"Every person who shall be convicted of rape by carnally and unlawfully

knowing any female person under the age of eighteen years shall be punished by confinement and hard labor not less than one nor more than twenty one years . . ."

Our statute on incest is G. S. 1935, 21-906. It provides as follows:

"Persons within the degrees of consanguinity within which marriages are by law declared to be incestuous and void, who shall intermarry with each other, or who shall commit adultery or fornication with each other, or who shall lewdly and lasciviously cohabit with each other, shall upon conviction be punished by confinement and hard labor not exceeding seven years."

In *State v. Patterson*, 66 Kan. 447, 71 Pac. 860, the defendant was charged with embezzlement while he was city clerk. On his trial he filed a plea in bar and alleged that he had previously been acquitted of forgery of the city's records and that the two offenses were identical. The trial court overruled the plea. After conviction and on appeal this court made an exhaustive examination of the subject of identity of offenses. In the course of the opinion it was said:

"The statute defining one crime punishes the falsification of records of business transactions; that is the substantive offense. The statute defining the other crime punishes the conversion of money; that is the substantive offense. Each statute relates to a separate criminal act. The issues to be tried in each case are not identical. Neither offense includes the other offense. In each case some act which constitutes an indispensable element of the crime is necessary, which is different from any act required by the other. All the evidence necessary to prove the receipt and conversion of money with intent to defraud would not establish the making of false entries with intent to defraud, and all the evidence necessary to prove the forging of entries of accounts would not prove the receipt and conversion of money." (p. 452.)

In *State v. Learned*, supra, the defendant made the same argument petitioner makes here, namely that since an ingredient of the offense of incest was consent and since under our statutes a female under the age of eighteen could not give her consent to intercourse, then one could not be guilty of incest and statutory rape with the same female. The court first passed over the question of whether under our statute joint consent of both parties was necessary to constitute the crime of incest. The court then said:

"The inquiry then arises, Can a girl under the age of eighteen years consent to an act of sexual intercourse with one within the degrees of relationship within which marriage is incestuous and void, and thus become guilty of incest? If not, why not? There is no statutory provision or common-law rule to the contrary. Section 2016 of the General Statutes of 1901, commonly called the age-of-consent law, simply provides that 'every person who shall be

convicted of rape; either by carnally and unlawfully knowing any female under the age of eighteen years, or,' etc. This does not disqualify the female under eighteen years from consenting, but provides, in effect, that her consent is no defense; that notwithstanding her consent the act, on the part of the man, constitutes the crime of rape. (*The State v. Woods,* 49 Kan. 237, 30 Pac. 520; *The State v. White,* 44 Kan. 514, 520, 25 Pac. 33.) We answer the question in the affirmative. A female under the age of eighteen years may be guilty of the crime of incest." (p. 332.)

The case of *State 'v. White,* 44 Kan. 514, 25 Pac. 33, seems to have been the first prosecution for statutory rape after the statute was amended in 1887 by changing the age stated in the statute from ten years to eighteen. The author of the opinion did not like the change since the result, as he saw it, was to make rape out of a simple act of fornication when the female in the case was under eighteen. He pointed out when the law was first adopted the legislature believed a girl ten years old had capacity to give her consent to intercourse and did not have such capacity at an earlier age, but that in 1887 it would seem that the lawmakers believed the girls of Kansas at that time had no capacity to give any intelligent consent to sexual intercourse until they arrived at the age of eighteen years. This court said:

"In substance, however, the law-makers simply intended to punish any male person by imprisonment in the penitentiary at hard labor for a term not exceeding 21 years who might be guilty of any kind of illicit sexual intercourse with any girl under 18 years of age whether she consented or not, and whatever might be the surrounding circumstances, and although the intercourse might be pure and simple fornication." (p. 520.)

From the earliest times in this state the age limit stated in the statute defining statutory rape has been spoken of as the "age of consent." Actually, however, the word "consent" does not appear in the statute. The real meaning of the statute is that whereas under some of the other statutes the state must prove the use of force or promise of marriage, the use of a drug or some other element, in a prosecution for a violation (G. S. 1935, 21-424), all the state has to prove is fornication and that the female was under eighteen. That construction gave us the term "statutory rape." The statute makes an act rape which but for its peculiar provisions as to the age of the female would not be rape at all. To hold as argued by the petitioner here would be to give G. S. 1935, 21-424, a meaning not intended by the lawmakers and not given it by any court.

As to the practice of charging statutory rape and incest in two

different counts of the same information, *State v. Odle,* 121 Kan. 284, 246 Pac. 1003, is analogous. There one count charged forcible rape and the other incest. After holding that this could be done this court said:

"It is largely a question of procedure, a matter of resting in the sound judicial discretion of the trial court, whether or not the rights of a defendant will be prejudiced by the trial of the several charges at one time. In the instant case, no showing is made that the defendant was prejudiced in any manner by the joinder of the two counts. In *State v. Goodwin,* 33 Kan. 538, 6 Pac. 899, it was held that two distinct and separate felonies—one, taking a female under the age of eighteen years for the purpose of prostitution, and the other, taking the same female for the purpose of concubinage—could be joined in one information in separate counts. (See, also, *State v. Fisher,* 37 Kan. 404, 15 Pac. 606; *State v. Bussey,* 58 Kan. 679, 50 Pac. 891; *State v. Warner,* 60 Kan. 94, 55 Pac. 342; *State v. Bell,* 107 Kan. 707, 193 Pac. 373; *State v. John Handrub,* 113 Kan. 12, 213 Pac. 827; *State v. Saindon,* 117 Kan. 122, 230 Pac. 301; *State v. Hamilton,* 119 Kan. 564, 240 Pac. 416; *State v. Miner,* 120 Kan. 187, 243 Pac. 318.)" (p. 286.)

To the same general effect is *State v. Toelkes,* 139 Kan. 682, 33 P. 2d 317.

We hold that the petitioner was rightly charged with statutory rape and incest in the same information. It will be remembered that two like informations were filed against petitioner except for the name of the female and a like sentence was passed on each information. No reference was made in either case to the sentence in the other. We are not called upon here to pass on the effect of these two sentences. That question may arise when petitioner has become entitled to his release by having served his sentence on either one or the other of the informations. Either sentence was in the aggregate for twenty-eight years and petitioner has served only about eleven years.

We shall next consider petitioner's second ground upon which he asks for his release. This is that the alleged pleas of guilty are not binding upon him because obtained by means of threats and coercion of the county officials and his fear of mob violence toward himself and his family. To support this construction petitioner has attached a lengthy affidavit by himself in which he states he was held in jail and refused counsel or an opportunity to talk with his family; that coercion was practiced on him and he did not realize what was going on. Affidavits of the two daughters upon whom he is charged to have committed the offenses are furnished. In the affidavits made in 1939, the two girls say their father was not guilty and that they

were forced at the time of his trial to sign statements that he was guilty. These affidavits apparently were made to be used in a hearing for a parole. There is also an affidavit of petitioner's wife that he was not guilty; that the girls were forced to sign the statements against their father.

On the other hand respondent has furnished affidavits of the county attorney and sheriff in office at the time of the prosecution. In these affidavits the affiants deny any coercion or mistreatment, and state that the information was furnished by the petitioner's wife and the girls voluntarily. They state in addition that petitioner's counsel, C. C. Wilson, since deceased, a reputable and capable attorney of Meade, was given access to him at all times. In addition, we have an excerpt from the testimony of petitioner himself offered at the trial in the district court of Leavenworth county. It is as follows:

"On direct examination, conducted by Petitioner's counsel, Benj. F. Endres, defendant testified as follows:

"Q. And preliminary examination was waived? A. This counsel said we waive.

"Q. Mr. Wilson of Meade County appeared for you at the preliminary? A. Yes.

"On cross-examination of Petitioner by Leon W. Lundblade, Assistant Attorney General, defendant testified as follows with reference to threats of mob violence:

"Q. Well, Mr. Wiebe, you say the County Attorney and Sheriff came and talked to you about every day or several times, now how many times would you say they threatened you? A. Well, the chances are a half day two or three times.

"Q. Their threats didn't scare you? A. Kept me very much on ends.

"Q Did that frighten you? A. No.

"Q. Now about this, about these mobs, what was it you say they did to upset you? A. Threats, threatened my family to be mobbed.

"Q. Now why would your family be mobbed? Did you know? A. I questioned it, I did."

It will be seen the above testimony falls short of substantiating the claims of petitioner as to what happened. This particular question is a perplexing one in these habeas corpus cases. The petitioners are prone to make extravagant claims as to what happened at their trials. Quite often some of the witnesses are deceased, as is the case here with the lawyer who was counsel for petitioner when he pleaded guilty. It is difficult to believe that men elected to the responsible offices of county attorney and sheriff would be so anxious to send

a fellow citizen to the penitentiary for a long time and that they would coerce two little girls into making a false statement of such a revolting crime against their father.

We have concluded that the affidavits furnished by petitioner do not substantiate his allegations as to coercion at the time he pleaded guilty, so as to entitle him to be released.

The third ground upon which petitioner relies is that he should be released because there was no corroborative evidence as to his being guilty other than his plea of guilty. We have heretofore held that the taking of a plea of guilty without corroborative evidence was at most a nonjurisdictional trial error. It was not subject to corrections and review in habeas corpus. (See *Hill v. Hudspeth*, 161 Kan. 376, 168 P. 2d 922; *Powers v. Hudspeth*, 161 Kan. 777, 173 P. 2d 251; and *Kneisley v. Hudspeth*, 161 Kan. 772, 173 P. 2d 247.)

The writ is denied.

HOCH, J., not participating.