THE STATE OF KANSAS v. ALLIE HEWES.

No. 11336.

1. CRIMINAL PROCEDURE—*Information—Duplicity.* Where an offense charged may be committed by two different means, and as several acts connected with and forming part of a general offense may be stated in a single count, its commission by both means may be charged in one count of the information, and proof of either will sustain the allegation.

2. ——— *Plea in Abatement.* A plea in abatement must be certain to every intent and leave nothing to be drawn from inference. It should exclude and negative all matters which, if alleged in reply, would defeat it.

3. MANSLAUGHTER—*Incompetent Testimony.* Declarations of another to the effect that if the defendant got into trouble with the deceased he would kill him, not made in the presence of the defendant and to which he had in no manner assented, are not admissible in evidence.

4. ——— *Hearsay Testimony.* Certain hearsay testimony examined, and its admission held to be prejudicial error.

5. CRIMINAL PROCEDURE—*Convict under Sixteen.* A person convicted of a felony who is under the age of sixteen years may be sentenced to the reform school or to the county jail, but cannot be sentenced to the state penitentiary.

Appeal from Kingman district court; G. W. Mc-Kay, judge. Opinion filed July 8, 1899. Reversed.

*A. A. Godard,* attorney-general, *J. Q. Jenkins,* county attorney, and *John E. Lydecker,* for The State.

*Milton Brown,* and *C. W. Fairchild,* for the appellant.

The opinion of the court was delivered by

JOHNSTON, J. : In an information filed by the state against Allie Hewes, he was charged with the murder of Robert Bomar "by hitting him with a club, and by shooting him, the said Robert Bomar, with a certain pistol commonly called a revolver, then and there

loaded with powder and leaden bullets, which said pistol so as aforesaid loaded with powder, leaden bullets and caps he, the said Allie Hewes, then and there in his hands had and held, contrary to the statute in such cases made and provided." The testimony at the trial showed beyond dispute that the defendant shot Bomar twice, that he did not assault or hit him with a club, and that the death of Bomar resulted from the shooting. The jury found the defendant guilty of manslaughter in the third degree, and, although he was less than sixteen years of age, he was sentenced to confinement at hard labor in the penitentiary for a period of one year.

The first complaint is that the information is so indefinite and uncertain that it does not notify the defendant of the precise offense charged against him. As will be observed, the charge is that the defendant assaulted Bomar with a club and also with a pistol, and it is argued that it is bad for duplicity and uncertainty because it does not particularly state whether Bomar's death resulted from clubbing or shooting. As the offense charged may be committed by both means, and as several acts connected with and forming part of the general offense may be stated in a single count, the objection of the defendant is not good. It has already been held that "where a murder may have been committed by different means, and it is doubtful which was employed, its commission by all may be charged in one count of the information, and proof of any one will sustain the allegation, but the means so charged in the same count of the information must not be repugnant." (*The State v. O'Neil,* 51 Kan. 651, 33 Pac. 287.)

The defendant filed a plea in abatement alleging that he had not had a preliminary examination upon

the offense charged in the information, and that he had not waived such examination. A jury was demanded to try this plea and error is predicated upon refusal of the demand. It appears, however, that the plea itself was fatally defective. Informations may be filed against fugitives from justice without a preliminary examination, and there was nothing in the plea in question to show that the defendant was not a fugitive from justice when the information was filed. "Such pleas must be certain to every intent, and leave nothing to be drawn by inference. They must anticipate and include all such supposable matter as would, if alleged by the opposite party, defeat the plea." (1 Encycl. Pl. & Pr. 24.)

A great number of objections are made to rulings upon the testimony. Many of these objections are without merit, and some of the rulings, although erroneous, are not so prejudicial in character as to furnish grounds for a reversal. Objections are made, however, which are so serious in character that they cannot be overlooked. The mother of the deceased was permitted to testify that one of the Hewes children had told her that Allie Hewes, the defendant, said "that the one that shot the dog he would shoot them." The trouble between the Bomar and Hewes families resulted from the shooting of a dog by Robert Bomar on the day that he was killed by Allie Hewes. The Hewes children went to Bomar's to obtain a pail of water and the dog accompanied them. While there Bomar shot and killed the dog, and on the part of the state it is claimed that Allie Hewes became greatly incensed at the shooting of the dog and determined to have revenge; that accordingly he obtained a revolver, borrowed ammunition with which he loaded it, and went to Bomar's with the intention of shooting and killing Robert

Bomar. On the part of the defendant, it is claimed that shortly after the shooting of the dog, George Hewes, the father of the defendant, started to take a lister which he had previously borrowed over to Bomar's, and while doing so met Allie Hewes on the road and asked him to assist in pulling the lister into Bomar's yard; that Robert Bomar met them in the yard and some talk was had about the shooting of the dog which resulted in a collision between Robert Bomar and the elder Hewes; that while they were scuffling Bomar tried to draw a knife upon the elder Hewes, and that to protect his father the defendant drew his revolver and shot Bomar. In view of the claims of the parties and the theory upon which the case was tried, the hearsay evidence that the defendant had stated that he would shoot the one who shot the dog was material and prejudicial error.

After a motion to strike out this testimony was overruled the same witness was allowed to give a statement of Mrs. Hewes, the mother of the defendant, that the defendant said that "if anybody shot the dog he would shoot them." Another witness was permitted to state that before the shooting George Hewes said that "if his son Allie got into trouble with Bob Bomar he would kill him." From the form of the questions which elicited some of the testimony, at least it is plain that it was not for purposes of impeachment, and as the statements were not made in the presence of the defendant the reception of the same was unwarranted. "Nothing can be plainer or better established in the law of evidence than that one man shall not be bound by mere declarations of another in his absence, and with which he is in no manner connected, and has in no manner assented to." (*The State v. Keefe*, 54 Kan. 202, 38 Pac. 302.)

There was other testimony of the same general character and which was subject to the same objection.

Complaint is made of the rulings of the court in instructing the jury, and while some of the instructions given were superfluous and some of those refused might very well have been given, we are unable to see that the jury was misled by any of them, or that the defendant was prejudiced by the rulings thereon.

One other matter deserves attention. The defendant, who was less than sixteen years of age when judgment was pronounced, was sentenced to imprisonment at hard labor in the state penitentiary for a term of one year. The statutes provide that "whenever any person under the age of sixteen years shall be convicted of any felony, he shall be sentenced to imprisonment in a county jail not exceeding one year, instead of confinement and hard labor as prescribed by the preceding provisions of this act." (Gen. Stat. 1897, ch. 100, § 367; Gen. Stat. 1889, ¶ 2573.) This provision has been in force since the admission of the state, and in 1881 a further provision was made for cases of this character by which a boy under the age of sixteen years, convicted of an offense punishable by imprisonment, might, in the discretion of the court, be sentenced to the reform school. (Gen. Stat. 1897, ch. 100, § 368; Gen. Stat. 1889, ¶ 6515.) Under the statutes quoted, it was within the power of the court to sentence the defendant to the reform school or to the county jail, but it was not warranted in sentencing him to the state penitentiary.

For the errors mentioned the judgment will be reversed and the cause remanded for a new trial.