No. 46,638

The State of Kansas, *Appellee,* v. Ronald Lee Oliphant, *Appellant.*

(502 P. 2d 626)

Opinion filed November 4, 1972.

*G. T. Van Bebber,* of Troy, argued the cause and was on the brief for the appellant.

*J. D. Euler,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: The defendant was convicted of burglarizing the farm home of Bill Walts located in Doniphan County, and of stealing a number of valuable items belonging to Mr. Walts including a stereo, color television set, record player, binoculars, typewriter, guns and other assorted property. The burglary occurred

somewhere between the hours of 12:30 and 2:30 p. m. October 4, 1970. Two other parties, Danny Wolfe and Bill Ledinski, were charged with the same offenses.

Acting on information received by a member of the St. Joseph, Missouri police department, four officers visited and searched the defendant's apartment at 1217½ Prospect early the following morning. This search failed to reveal any of the stolen property. In the afternoon of the same day St. Joseph police officers, accompanied by an agent of the Kansas Bureau of Investigation, searched a vacant shed at 1215 Prospect, after receiving information that the defendant and one Danny Wolfe had been seen carrying some things into the shed. This search, which was made without a warrant, was more productive than the first and turned up several of the pilfered valuables.

Evidence was introduced at the trial that on the evening of September 5—the day following the burglary—the defendant, Danny Wolfe and a man by the name of Riley, sold four of the guns stolen from the Walts residence to a man from Iowa, the transaction taking place at a St. Joseph tavern. The price paid for the guns was $200.

Eight points are raised on appeal, but we shall confine ourselves to only the second, the admission of hearsay testimony, which we believe will dispose of this appeal. This particular claim of error results from the admission of testimony given by two police officers concerning statements allegedly made to them by Wolfe and Ledinski. The statements were given to the officers out of the defendant's presence, and the testimony in regard thereto was admitted over his strenuous objection.

One of the officers testified that Danny Wolfe stated that he and Ronnie Oliphant had come over to Wathena, Kansas, (shown to be about 1½ miles from the Walts residence) in Bill Ledinski's car, that they stopped at the Keg Tavern and that he and Ronnie went into the tavern and drank a bottle of beer while Bill remained in the car.

A second officer testified he interviewed Ledinski on March 1, 1971, at the jail in St. Joseph and there was a discussion that Oliphant and Wolfe had possibly used his, Ledinski's, car; that Ledinski suspected they may have used it.

The testimony of each of the two officers was clearly hearsay. Hearsay is defined in Black's Law Dictionary, Fourth Edition, p. 852, as:

"Evidence not proceeding from the personal knowledge of the witness, but from the mere repetition of what he has heard others say. . . ."

It is elementary in the law that hearsay evidence is not admissible, subject to certain well-defined exceptions. This was made clear long ago in this state by what was said by this court in *State v. Keefe,* 54 Kan. 197, 38 Pac. 302, where the court said:

". . . Nothing can be plainer, or better established in the law of evidence, than that one man shall not be bound by mere declarations of another, in his absence, and with which he is in no manner connected, and has in no manner assented to. . . ." (p. 202.)

See, also, *State v. Hewes,* 60 Kan. 765, 57 Pac. 959, where the foregoing passage is quoted at page 768.

But we need not look to our early case law to ascertain that hearsay is ordinarily not admissible, for the rule is now spelled out in K. S. A. 60-460 which, as a rule of evidence, was incorporated into our Code of Civil Procedure. This statute deals with the subject of hearsay and provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:"

Twenty-nine exceptions thereupon follow, as noted in subsections (*a*) to (*cc*) inclusive, but none are applicable to the situation before us.

The state seeks to justify the admission of the testimony on two grounds: First, it argues that both Wolfe and Ledinski were present at the trial and thus were available for cross-examination by the defendant. Thus it is said the testimony of the officers comes within the purview of subsection (*a*) of K. S. A. 60-460, which excepts from the operation of the hearsay rule:

"A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness:"

The state's argument in this respect is faulty, for neither witness, in our opinion, was available for cross-examination. Both Wolfe and Ledinski, while testifying in an out-of-court hearing, repeatedly claimed their privilege against self-incrimination and stated they would not answer questions on cross-examination. The privilege having been claimed, neither Wolfe nor Ledinski was available for cross-examination within the contemplation of 60-460 (*a*), for the definition found in K. S. A. 60-459 (*g*) is directly applicable to the situation at hand. The latter subsection reads:

" 'Unavailable as a witness' includes situations where the witness is (1) exempted on the ground of privilege from testifying concerning the matter to which his statement is relevant, . . ."

This court has judicially stated that a witness who has claimed his privilege is just as unavailable as one whose physical presence cannot be procured. (*State v. Terry*, 202 Kan. 599, 603, 451 P. 2d 211.) See, also, *State v. Austin*, 209 Kan. 4, 495 P. 2d 960, which touches the subject of privilege in a somewhat similar context.

The second ground advanced by the state to support the court's ruling is that the officers' testimony was offered only to prove that the statements were made—not to establish the truth thereof. It may be conceded that where an extrajudicial statement is offered merely to show the fact of its having been made, it is admissible when testified to by a person who heard it. (1 Wharton's Criminal Evidence, 12th Edition, Anderson, § 257 Verbal Acts Distinguished, p. 588.) The principle is discussed by Professor Wigmore in his work, 6 Wigmore on Evidence, 3d Edition, § 1766, pp. 177, 178, in these words:

". . . The essence of the Hearsay rule is the distinction between the testimonial (or assertive) use of human utterances and their non-testimonial use.

"The theory of the Hearsay rule (ante, § 1361) is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted*, the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule."

The good professor goes on to group the utterances exempted from the rule under three heads: those material to the case as part of the issue, those which are verbal parts of an act, and those used circumstantially as giving rise to an indirect inference but not as assertion to prove the matter asserted.

We believe the statements attributed by the officers to Wolfe and Ledinski fit none of the three exempt categories listed by Wigmore. The extrajudicial statement of Wolfe, in particular, had probative or testimonial value on the issue of guilt and was highly incriminating, for it would place Oliphant and his co-defendants, none of whom resided in Doniphan County, within a mile and a half of

the Walts home on the very day it was ransacked. In our opinion the utterances were testimonial in character despite the state's protestations that they were not being offered with that in mind. If not offered as tending to establish the defendant's presence in the community as a circumstance bearing on guilt, it would seem highly improbable that the state would have insisted on offering the statements at all. The Kansas cases cited by the state in support of its position on admissibility are distinguishable.

By constitutional mandate, both state and federal, the defendant in a criminal case is entitled to be confronted by the witnesses against him. *Pointer v. Texas*, 380 U. S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065; *Douglas v. Alabama*, 380 U. S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074; *State v. Hooks*, 202 Kan. 68, 446 P. 2d 770.

In 5 Wigmore on Evidence, 3d Edition, § 1395, p. 123, it is said:

"The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers."

Wolfe and Ledinski were not available for purposes of cross-examination; they were claiming their constitutional rights against self-incrimination; and the defendant was thus deprived of an opportunity to cross-examine either of them.

The state points to the statement made by the county attorney at the close of its case that he would agree that any statement made by Wolfe or Ledinski to the officers be excluded as evidence. This magnanimous offer came, of course, after the hearsay evidence was already before the jury and, in our opinion, could hardly repair the damage already done. This was the view taken by defense counsel when the court asked if he wanted the jury instructed not to consider the officers' testimony. Counsel replied he did not, because he was afraid it would call more attention to their testimony. We are inclined to agree. In *Bruton v. United States*, 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the trial court instructed that the confession of a co-defendant offered in a joint trial could be considered only as against him who made it and not against Mr. Bruton. The supreme court, in reversing the case, said it could not "accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." (p. 137.)

Finally, it is said the hearsay testimony was merely cumulative

and therefore not prejudicial. We do not view it so lightly. It is true that the mother of. Mr. Walts testified she had seen Wolfe and the defendant in the Keg Tavern between one and two o'clock, September 4, but hers was the only testimony placing the defendant in the vicinity except for the extrajudicial statements attributed to his alleged fellow accomplices. Evidence of Oliphant's presence in the area of the crimes was not so overwhelming that we can say the proscribed testimony had no effect on the jury's deliberations or that the jury did not give it consideration in arriving at its verdict.

The conclusion we have reached with respect to the admission of hearsay testimony makes it unnecessary for us to consider the other points which are raised.

The judgment is reversed with directions to grant the defendant a new trial.