(631 P.2d 674)

No. 52,583

STATE OF KANSAS, *Appellee,* v. SCOTT PHILLIP BELT, *Appellant.*

Petition for review denied September 18, 1981.

Opinion filed July 10, 1981.

*Eugene C. Riling,* of Riling, Norwood, Burkhead & Fairchild, Chartered, of Lawrence, and *Milton P. Allen, Jr.,* of Allen & Cooley, of Lawrence, for the appellant.

*Michael J. Malone,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., REES and SWINEHART, JJ.

SWINEHART, J.: The defendant appeals his conviction for arson. K.S.A. 21-3718. He complains that the trial court erred in excluding the testimony of Kathleen Logan and David O'Connor, and that the trial court erred in allowing the expert testimony of George Bonebrake, because such testimony was cumulative and prejudicial.

George Wheeler, a police officer for the city of Lawrence, testified that on December 2, 1979, while working the midnight to 8:00 a.m. shift, he was patrolling the area of 8th and Vermont. Wheeler stated that he checked the area at approximately 2:00 or 3:00 a.m. and had noticed nothing unusual, but upon rechecking the area at approximately 5:30 a.m. that same morning, noticed smoke coming from the building at 205-½ West 8th Street, which is directly across the street from fire station No. 1. The officer called in a fire alarm at 5:35 a.m. After phoning in the alarm, Wheeler checked the building to see if it was secured and found no evidence of any forced entry. All the doors of the building were securely locked, and all the glass was in the windows and doorway. Wheeler further stated that at the time he observed

smoke, he also observed only one car in the area, and that was a small silver car, either a Datsun 280-Z or a small Honda, parked in front of the curb at 205-½ West 8th. He could not recall seeing this vehicle on his prior check of the building at 2:00 or 3:00 a.m.

Major Robert Coleman, a fireman for the Lawrence Fire Department, testified that at approximately 5:10 a.m. he observed from fire station No. 1 a small silver compact car, heading west on 8th Street, turn into the alley between Vermont and Kentucky Streets, and then turn back east behind the subject building. Coleman then testified that the same silver car made a U-turn on Vermont, just south of 8th and Vermont, and drove back south along Vermont with its lights out. At no time did he see the vehicle stop, anyone get out of the vehicle, nor anyone enter the front door of the subject building, which was approximately fifty feet from fire station No. 1.

Edward Sangster, another Lawrence firefighter, testified that at about 5:00 a.m., a silver Toyota Celica, traveling west on 8th Street, turned into the alley and then turned behind the subject building. Sangster lost visual contact with the vehicle after it turned behind the building.

In regard to the fire itself, Major Monte Pearson of the Lawrence Fire Department determined that the fire in The Entertainer, a business located in the building, had burned for approximately twenty minutes before the fire department started to extinguish the fire.

Larry Stemmerman, a fireman with the City of Lawrence and a member of the Douglas County arson squad, testified that the fire was of an incendiary origin and not of an accidental nature. He reached his conclusion based on his observations of the scene, which were lack of a V-pattern in burning; heavy char where the fire had gone up a vent; discovery of a partially burned roll of toilet paper in the bathroom of The Entertainer, which smelled of a petroleum product; and the burn pattern on the floor of the bathroom.

Paul Schultz, sergeant of detectives for the University of Kansas Police Department and a member of the Douglas County arson squad, testified that after the fire was extinguished, he recovered from the floor of a closet, located in the southwest corner of the lobby adjacent to the bathroom where the fire originated, a one-quart can of Porter paint thinner which was

approximately one-third to one-half full. Schultz examined the can and noticed several partial latent prints on the can. He then lifted the latent prints and put the print card in an envelope for examination by the Kansas Bureau of Investigation.

Stan Heffley, a chemist and analyst with the Kansas Bureau of Investigation, testified that he had found that the partially burned roll of toilet paper contained vapors and liquid which was flammable liquid very similar in composition to the vapor and liquid present in the can of paint thinner.

Robert Olsen, a criminalist for the KBI and specialist in latent fingerprint identification, testified that a latent print found on the Porter paint thinner can matched the inked fingerprint of defendant.

George Bonebrake, a private consultant in latent fingerprint identification, identified the latent print as being the same as the inked fingerprint of defendant.

In an attempt to establish defendant's possible motive in starting the fire, the State called Dennis Barritt, one of the owners of the subject building. Barritt testified that the building houses the businesses of Rocky J's Bar (now Mr. Bill's Bar), The Entertainer, Bogart's, the Lawrence School of Ballet, and the Great American Hot Dog. Defendant had owned Rocky J's with Jeff Hamm and two others. Two days before the fire, Rocky J's was sold by Hamm to Dennis Barritt, Mark Cooper and Bill Bergin, without defendant's consent. At the time of the sale there was a dispute between defendant and Hamm as to whether defendant had abandoned his interest in Rocky J's, thus making his consent to the sale unnecessary. Hamm determined that defendant had abandoned his interest, and sold Rocky J's with defendant receiving nothing from the sale. Barritt further testified that access to The Entertainer could be gained only by one having a key to the front door of The Entertainer, absent any evidence of a break-in or forced entry.

Defendant testified in his own behalf. He admitted that he owned a silver Toyota Celica liftback, and that on December 2, 1979, he was in the area of 205-½ West 8th around 5:00 a.m. Defendant explained that he owned a security business and that he was in the area looking for David Wright, one of his employees, so that he could obtain a key to The Sanctuary, a private club that was a client of defendant's security business. He tried to

locate Wright at Weaver's Department Store, located approximately two blocks from the scene of the fire, because he knew Wright would be checking Weaver's at about this time. Defendant then turned into the alley just west of the building that houses Rocky J's and The Entertainer. Defendant stated that he drove behind the building to see if Rocky J's was secured, as there had been break-ins in the past and as he still had a disputed interest in Rocky J's. Five or ten minutes later he drove up the alley, headed north and turned behind The Entertainer, and exited on Vermont. When he exited on Vermont his car lights were off so as not to broadcast his coming while running his security checks.

Defendant further testified that he was in the area of the building around 5:30 a.m., still trying to locate Wright. At this time it was obvious that the building was on fire, but he did not stop to investigate what was going on. He also testified that he had previously lost his key to The Entertainer and had not been in the building for four months.

Notwithstanding the objection of defendant's attorney, the trial judge refused to allow the offered evidence of Kathleen Logan and David O'Connor, witnesses called by the defendant, with regard to a conversation they had with an unknown, unnamed, white male at 11:00 p.m. on December 1, 1979, in Bogart's, a cereal malt beverage bar which is housed in the same building as The Entertainer. Apparently the unknown declarant approached Logan and O'Connor and stated either, "Are you going to stay around and watch the fire department?" or "Are you going to stay around and watch the fire?" Both witnesses, in their offer of proof, testified that the statement was made by a dark-complected man dressed in a green army fatigue jacket and blue stocking cap, who was acting weird, like a "wild man." Both testified in the offer that the declarant was not the defendant herein. Kathleen Logan called the Lawrence Police Department on December 2, 1979, after hearing about the fire at The Entertainer, and asked to make a report concerning the conversation. Pamela Cobb, a Lawrence police officer, made a report of the conversation and included the report in the investigation of the fire.

The trial judge excluded the offered testimony on the following grounds: (1) The offered evidence was hearsay, and (2) the statement did not fall within one of the exceptions to the hearsay rule.

Defendant argues that the trial court erred in excluding the

offered testimony for the reason that the statement in question was not hearsay.

K.S.A. 60-460 defines hearsay in these terms:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the matter stated is hearsay evidence . . . ."

In *State v. Oliphant,* 210 Kan. 451, Syl. ¶ 1, 502 P.2d 626 (1972), the Kansas Supreme Court stated:

"As a general rule hearsay evidence is incompetent and inadmissible to establish a fact, although the rule is subject to certain exceptions."

The court also stated:

"It may be conceded that where an extrajudicial statement is offered merely to show the fact of its having been made, it is admissible when testified to by a person who heard it. (1 Wharton's Criminal Evidence, 12th Edition, Anderson § 257 Verbal Acts Distinguished, p. 588.) The principle is discussed by Professor Wigmore in his work, 6 Wigmore on Evidence, 3d Edition, § 1766, pp. 177, 178, in these words:

" '. . . The essence of the Hearsay rule is the distinction between the testimonial (or assertive) use of human utterances and their non-testimonial use.

" 'The theory of the Hearsay rule (ante, § 1361) is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.'

"The good professor goes on to group the utterances exempted from the rule under three heads: those material to the case as part of the issue, those which are verbal parts of an act, and those used circumstantially as giving rise to an indirect inference but not as assertion to prove the matter asserted." 210 Kan. at 454.

See also *State v. White & Stewart,* 225 Kan. 87, 587 P.2d 1259 (1978); *State v. Thompson,* 221 Kan. 176, 558 P.2d 93 (1976); *State v. Trotter,* 203 Kan. 31, 453 P.2d 93 (1969); *State v. Lopez,* 182 Kan. 46, 318 P.2d 662 (1957).

The declarant's statement was offered only to prove that the statement was made. It was not offered to prove that the declarant was waiting around in the bar because he knew a fire would start in the building in a few hours.

K.S.A. 60-2105 provides:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial

rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court; and in any case pending before it, the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court."

The excluded evidence was certainly relevant in this case. The unknown declarant's statement was made in the subject building just five hours prior to the fire being set.

It cannot be said that the excluded testimony would not have changed the result at trial. The evidence against defendant was not overwhelming. The only means of entry to The Entertainer was through its front door, which was just fifty feet from a fire station across the street. Two firemen were watching defendant's car drive through the area at the time the fire had to have been started. Neither saw him or anyone else get out of his car. In addition, several prosecution witnesses testified that it was not unusual to see defendant out and about in this area in the early morning hours due to the nature of his work.

The strongest evidence against defendant was the identification of his fingerprint on a can of paint thinner found in a closet near the site of the fire. However, the paint thinner had been purchased four or five days prior to the fire and obviously there was no way of telling how long his fingerprint had been on the can. Defendant certainly had access to The Entertainer as he was a part owner of one of the bars in the building and his business provided security for parties held at The Entertainer. Weighing against defendant, however, was his admission that he had not been in the building for four months prior to the fire.

It is our finding that the trial court erred in failing to admit the offered testimony, and the judgment is reversed and the case is remanded for new trial.

Defendant further contends that the trial court erred in allowing George Bonebrake, a private consultant in latent fingerprint identification, to testify for the reason that his testimony was cumulative.

A review of the record reveals that Bonebrake's testimony served to reinforce Olsen's testimony regarding the identification of the latent print. The standard of review to be applied is that this court will not reverse the trial judge except for an abuse of discretion which affirmatively appears to have affected the sub-

stantial rights of the party complaining. K.S.A. 60-2105. In view of the fact that the testimony of the first expert was questioned by the defendant through cross-examination, the use of an additional expert witness to buttress the testimony of the first expert is not considered to be cumulative. We find the trial court properly admitted this testimony.

Reversed and remanded.